WALLERSTEIN *v.* BOARD OF CONTROL OF STATE HOUSE OF CORRECTION AND REFORMATORY.[1]

PRISONS—POWERS OF WARDEN—CONVICT LABOR.

Section 34 of Act No. 118, Pub. Acts 1893, makes it the duty of the boards of control of the various prisons in the State to meet once in six months in joint session to determine what lines of labor shall be pursued in each prison. Other sections of the act require the wardens to keep prisoners constantly employed at hard labor " beneficial to the State," and provide that "all the fiscal transactions and dealings on account of each prison shall be conducted by and in the name of the warden." *Held,* that, where the joint prison board has taken no action in the way of determining the lines of

---

[1] Rehearing denied May 24, 1898.

employment to be pursued in a prison, the warden thereof
may, with the approval of the board of control, make a valid
contract for the employment of convicts, for a term of years,
along any line consistent with the provisions of the act.

*Mandamus* by Alfred Wallerstein to compel the board
of control of the state house of correction and reforma-
tory at Ionia to approve a bond.    Submitted March 1,
1898.    Writ granted March 15, 1898.

*John Atkinson* ( *Cahill & Ostrander*, of counsel ), for
relator.

*Fred A. Maynard*, Attorney General ( *Alfred Luck-
ing*, of counsel ), for respondent.

MONTGOMERY, J.    On the 17th of December, 1897, the
petitioner entered into a contract with the warden of the
state house of correction, which was approved by the
board.    This contract provided for the employment of
300 inmates of the house of correction, " or so many there-
of as are not assigned to any contract now in force, or are
not assigned to do the general work of the prison," in the
business of the manufacture of shirts, collars, and cuffs.
This contract was for the term of 10 years, and the re-
lator was required to furnish a bond for the faithful per-
formance of the same in the sum of $10,000.    The relator
presented a bond to the board, which was pronounced
satisfactory as to terms and sureties, but the board refused
to approve the same because it had been directed by a
joint meeting of the prison boards to take no further
action in regard to the contract, and for no other reason.

Prior to 1891, the several prisons of the State had been
each controlled by its own board.    In 1891 this was
changed, and provision made for the control of all the
penal and reformatory institutions by a single board.    In
1893, by Act No. 118, a separate board was provided for
each of the several prisons.    The first section of this act
provides that persons sentenced to these several prisons
shall be confined and employed at hard labor.    By para-

graph 4 of section 9 of the act it is made the duty of the warden to use all proper means to furnish employment to the prisoners most beneficial to the State and best suited to their several capacities. Section 38 provides:

" All convicts other than such as are confined in solitude for misconduct in the prison shall, as far as practicable, be kept constantly employed at hard labor at an average of not less than ten hours a day, Sundays excepted, unless incapable of laboring by reason of sickness or other infirmity."

By section 2 of the act the government and control of the house of correction is vested in a board of control consisting of three members. In section 12 it is provided

" All the fiscal transactions and dealings on account of each prison shall be conducted by and in the name of the warden thereof."

It is clear that, under these provisions, the warden, with the approval of the board, would have the authority to make a contract for the employment of prisoners, unless that authority is restricted by other provisions of the act. It is contended by the attorney general, who appears on behalf of the joint boards, that such restriction is found in section 34, which reads:

" It shall be the duty of the prison boards to meet once in six months in joint session to determine what lines of productive labor shall be pursued in each prison, and in so determining said boards shall select diversified lines of industry, with reference to interfering as little as possible with the same lines of industry carried on by citizens of this State."

It does not appear that the boards have met in joint session and determined as to what lines of industry are to be adopted in each of the several prisons. Meetings have been held from time to time, contracts made by the several boards have been approved or disapproved, but no action restrictive of the powers of the several boards, other than this, has been taken. It is not contended that section 34 confers upon the joint boards the power to

contract, but it is contended that action of the joint boards is a condition precedent to the execution of any contract for the employment of the convicts. The question is not free from difficulty. We would have little hesitancy in saying that, if the determination contemplated by section 34 had been made, future contracts by the several boards must have been made with reference to and within the lines of this determination. The question is, Was it the intention that, before any such determination, the power to make a contract should exist in no one? We think not. Such a construction is inconsistent with the policy marked out by the other provisions of the act, and with the authority of the respondent to control the affairs of the prison.

The writ must issue as prayed.

The other Justices concurred.